IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

MACHELLE WIGGINS,

    Plaintiff,

      v.

UNIVERSITY HOSPITAL,

    Defendant.

CV 117-026

## O R D E R

Before the Court are Plaintiff's and Defendant's cross motions for summary judgment. (Docs. 47, 49.) Plaintiff alleges that Defendant violated Title VII when it (1) discriminated against her because of her race, color, and disability and (2) retaliated against her for complaining of discrimination. Defendant argues Plaintiff's disability-discrimination claim is barred because she failed to exhaust her administrative remedies and Plaintiff's discrimination and retaliation claims fail because Plaintiff did not demonstrate a prima facie case. The Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

# I. BACKGROUND[1]

Plaintiff, an African American, began working for Defendant in 1989 as a daycare employee. (Doc. 51, at 17.) In 1990 she began work as a unit clerk. (Id.) As a unit clerk, Plaintiff was responsible for completing paperwork, answering call lights, stocking items on the floor, assisting patients with blankets, providing juice or water, and escorting patients out of the hospital upon discharge. (Id. at 17-18.)

Over the course of Plaintiff's employment, Plaintiff was placed on probation three times, and received seven written warnings, one verbal warning, and two final written warnings. (Id. at 25-36.) On May 27, 2016, Plaintiff received the second of her final written warnings from her immediate supervisor, Danette Thomas. (Doc. 51-1, at 35.) Thomas claimed to issue the final written warning because Plaintiff had been tardy three days between April 24, 2016, and May 10, 2016, and another supervisor had observed Plaintiff not wearing her name badge at the hospital. (Id. at 35-39.) As a result of the final warning, Plaintiff became ineligible for, and was in fact denied, a raise in 2016. (Doc. 51, at 152; Doc. 63, at 2-3.)

On October 23, 2016, Kristie Connor, a charge nurse, alleged that she found Plaintiff asleep in a patient's room,

---

[1] Both Plaintiff and Defendant have moved for summary judgment. Because the Court **GRANTS** Defendant's motion for summary judgment, the Court provides only one recitation of the facts detailed in a light most favorable to Plaintiff.

room 1043, during Plaintiff's shift. (Doc. 51-1, at 86.) The hospital had already assigned a sitter to the patient in room 1043, and the sitter, Calandra Harris, was present when Connor found Plaintiff in the room. (Doc. 51, at 85, 92.) Connor notified Thomas, and Thomas notified Defendant's Human Resources Department. (Doc. 53, at 2.)

Vita Mason, an Employee Relations Specialist, commenced an investigation of the incident. (Doc. 53, at 2.) During the investigation, Mason gathered statements from Connor and two additional eyewitnesses. (Id.) Micah Long, a registered nurse, stated that he found Plaintiff asleep on the couch of room 1043 the night of October 23, 2016. (Doc. 51-1, at 83-84.) Jamie Chafin, a nurse, stated that she saw Plaintiff sitting in the chair of room 1043 covered by a blanket on the night of October 23, 2016. (Id. at 85.) Mason "concluded that Plaintiff had gone into a patient's room to go to sleep and that Plaintiff had no reason to be in the patient's room." (Doc. 49-2, at 5.) Plaintiff testified that while to her knowledge she did not fall asleep, she had "maybe been dozing." (Doc. 51, at 89.)[2]

At the conclusion of the investigation, Thomas asked that Plaintiff not be terminated. (Doc. 54, at 2.) Mason, however,

---

[2] Plaintiff argues in her response to Defendant's motion for summary judgment that that "she did not go into the patient's room with the intent to sleep." (Doc. 64, at 13.) The Court, however, disregards this argument because it is not supported by any evidence in the record. See Fed. R. Civ. P. 56(c)("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record.").

recommended termination because sleeping in a patient's room is a severe violation of hospital policy and Plaintiff had already received a final written warning on May 27, 2016. (Doc. 53, at 3.) On October 27, 2016, at the recommendation of Mason, Thomas terminated Plaintiff's employment. (Doc. 54, at 2.) Both Thomas and Mason are African-Americans. (Doc. 53, at 1; Doc. 54, 1.)

On November 21, 2016, Plaintiff submitted an Intake Questionnaire ("Questionnaire") to the Equal Employment Opportunity Commission ("EEOC"). (Doc. 51-1, at 77-81.) Two days later, on November 23, 2016, Plaintiff submitted a Charge of Discrimination ("Charge") to the EEOC. (Doc. 1, at 11.) The Charge alleged:

> On and about May 15, 2016, I was removed from a shift and the shift was given to a Unit Clerk who [was] of a lighter complexion than me. On May 27, 2016, I told my immediate Supervisor, Danette Thomas, that I felt I was treated differently. On October 27, 2016, I was discharged. Ms. Thomas told me that I was discharged for violating company policies. I believe that I have been discriminated against because of my color (dark skin complexion), in violation of Title VII.

(Id.) On December 6, 2016, the EEOC issued Plaintiff a Dismissal and Notice of Rights (the "Notice") granting Plaintiff the right to sue within 90 days of receipt of the Notice. (Id. at 9.) Plaintiff filed suit in this Court on March 2, 2017. (Id. at 1.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 323. When the movant does not carry the burden of proof at trial, it may satisfy its initial burden in one of two ways — by

negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp., 477 U.S. 317). The movant cannot meet its initial burden by merely declaring that the non-moving party cannot meet its burden at trial. Id.

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presented evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris

v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of the Court gave the parties notice of the motions for summary judgment and informed them of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 48, 55.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### III. DISCUSSION

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); see also 42 U.S.C. § 2000e-2(m) (employment actions where race, color, religion, sex, or national origin was a motivating factor are unlawful, even though other factors also motivated the action). Title VII also prohibits an employer from "discriminat[ing] against any of his employees or applicants for employment . . . because [the employee or applicant] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee or

7

applicant] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

Title VII does not, however, allow federal courts to second-guess an employer's nondiscriminatory business judgment, nor does it replace an employer's notions about fair dealing in the workplace with that of judges. Flowers v. Troup Cty., Ga., Sch. Dist., 803 F.3d 1327, 1338 (11th Cir. 2015). The courts are not a "super-personnel department" that assesses "the prudence of routine employment decisions, no matter how medieval, high-handed, or mistaken." Id. (citing Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010)). Employers are free to make adverse employment decisions against their employees for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its [decision] is not for a discriminatory reason." Id. (citing Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984)).

Defendant makes three main arguments: (1) Plaintiff's disability discrimination claim is barred because Plaintiff failed to allege this claim in either her Intake Questionnaire or Charge; (2) Plaintiff has failed to demonstrate a prima facie case of discrimination; and (3) Plaintiff has failed to demonstrate a prima facie case of retaliation.

## A. Disability

Defendant argues that Plaintiff may not proceed with her disability-discrimination claim because she did not make that allegation in her charge. "No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge. EEOC regulations provide that charges should contain, among other things, '[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.' A 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Alexander v. Fulton County, Ga., 207 F.3d 1303, 1332 (11th Cir. 2000) (quoting 29 C.F.R. § 1601.12(a)(3); and Mulhall v. Advance Security, Inc., 19 F.3d 586, 589 n.8 (11th Cir. 1994)). Because Plaintiff's charge alleged only race and color discrimination, the Court finds that the scope of the EEOC investigation could not reasonably be expected to include discrimination based upon a disability never alleged or identified in Plaintiff's charge. See Gill v. Bank of America Corp., No. 2:15-cv-319-FtM-38CM, 2015 WL 4349935, at *4 (M.D. Fla. July 14, 2015) (holding that the plaintiff's "EEOC charge contains no allegations that would have allowed the EEOC to infer and investigate a claim of color discrimination" even though the plaintiff alleged race discrimination in her charge). Accordingly, any allegations of

disability discrimination are outside the scope of Plaintiff's complaint.

Plaintiff's failure to include a disability discrimination claim, however, is merely a failure to exhaust administrative remedies. Administrative exhaustion is a matter of abatement unrelated to the merits of the underlying claim. See Duble v. FedEx Ground Package Sys., Inc., 572 F. App'x 889, 892 (11th Cir. 2014) ("Exhaustion of administrative remedies is a matter in abatement that should be raised in a motion to dismiss, or treated as such if raised in a motion for summary judgment." (citing Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008))). Accordingly, the Court will not grant summary judgment but will instead only dismiss Plaintiff's disability discrimination claim.

## B. Race and Color Discrimination

When a plaintiff uses circumstantial evidence to prove disparate treatment based upon race or color, courts apply the McDonnel Douglas analysis. Burke-Fowler v. Orange Cty, 447 F.3d 1319, 1323 (11th Cir. 2006). This analysis uses three steps to sift through the validity of a plaintiff's claim. First, the plaintiff must establish a prima facie case of disparate treatment. Id. "To establish a prima facie case for disparate treatment in a race discrimination case, the plaintiff must show that: (1) she is a member of a protected class; (2) she was

10

subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." Id. If a plaintiff proves a prima facie case, the defendant "must show a legitimate, non-discriminatory reason for its employment action." Id. If the defendant makes such a showing, the plaintiff must then prove that the reason offered is "merely pretext for unlawful discrimination." Id.

In her complaint, Plaintiff makes three allegations of discrimination based upon race or color. First, she alleges that Defendant discriminated against her when Thomas removed her from a shift and gave the shift to "a Unit Clerk who is of lighter complexion than [Plaintiff]." (Doc. 1, at 11.) Second, she alleges that Defendant discriminated against her when Defendant terminated her but did not terminate other employees who committed similar offenses. (Id.) Third, she alleges that Defendant discriminated against her when Thomas gave her a final written warning on May 27, 2016. (Id.)

Defendant argues that Plaintiff has failed to make a prima facie case of race or color discrimination with regard to any of her claims. Defendant concedes that Plaintiff is a member of a protected class and was qualified to do the job. (Doc. 49-1, at 10.) Defendant argues, however, that neither Plaintiff's removal from a shift on May 15, 2016, nor the final warning

issued Plaintiff on May 27, 2016, were "adverse employment action[s]." Burke-Fowler, 447 F.3d at 1323. Defendant also argues that Plaintiff cannot show that Defendant "treated similarly situated employees outside of her protected class more favorably than she was treated." Burke-Fowler, 447 F.3d at 1323.

## 1. Removal From Shift on May 15, 2016

"[T]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original). Because overtime and comp time opportunities affect[] compensation, a denial of such opportunities could constitute an adverse action." Hall v. Dekalb Cty. Gov't, 503 F. App'x 781, 788 (11th Cir. 2013). Nevertheless, when a plaintiff "consistently receiv[es] overtime and comp time benefits, [] the occasional denial of additional benefits [does] not constitute a serious and material change in [her] employment." Id. at 789. Here, between January 1, 2016, and October 24, 2016, Plaintiff worked a total of 3,181.50 hours, including 1,381 overtime hours. Thus, the Court

12

concludes that being removed from a single shift on a single day does not constitute a serious and material change in her employment. See id. Therefore, Plaintiff has not made a prima facie case of discrimination with regards to her removal from the shift on May 15, 2016.[3]

## 2. Final Warning on May 27, 2016

Assuming, arguendo, that the final warning was an adverse employment action, Plaintiff has failed to establish that Defendant treated similarly situated employees outside of her protected class differently than her. "When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, [courts] evaluate 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" Burke-Fowler, 447 F.3d at 1323 (quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)). To be similarly situated, the Eleventh Circuit requires "'that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges.'" Id. "If a plaintiff fails to show the existence of

---

[3] Plaintiff's filings appear to make reference to multiple instances of discrimination related to Plaintiff's work schedule. Plaintiff's complaint, however, alleges only the single instance of discrimination on May 15, 2016, and Plaintiff has not moved to amend her complaint to include any additional instances of discrimination. Accordingly, the Court will not consider any additional instances now. Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave.").

a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

Plaintiff identifies two potential comparators: Laverene Hatcher, an African-American with a lighter complexion than Plaintiff, and Alba Cull, who is not an African-American. (Doc. 64, at 17.) Plaintiff asserts that Hatcher, like Plaintiff, was given a final written warning for time and attendance violations but received a raise in 2016 nevertheless. (Id. at 9.) Plaintiff asserts that Cull was "repeatedly late for her tour of duty." (Id. at 17.) Finally, Plaintiff asserts that she "received harsher punishment than Ms. Hatcher and Ms. Cull R.N." (Id. at 11.)

The Court concludes neither Hatcher nor Cull are valid comparators. First, Hatcher is also an African-American and disqualified as a comparator for Plaintiff's race-discrimination claim. Second, Hatcher also received a final written warning. (Doc. 63, at 3.) Third, the time and attendance problems Plaintiff cites for Cull are years old. (Doc. 64-1, at 183-194.) Many of the documents cited by Plaintiff date to the early 2000s and the latest time and attendance issue cited by Plaintiff is January 2011 — more than 5 years before Plaintiff received her written warning. See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 ("The plaintiff and the employee she identifies as a comparator must be similarly situated in all

14

relevant respects." (citations and quotations omitted)(emphasis added)). Additionally, many of the documents Plaintiff does cite confirm that Cull was put on probation as a result of her time and attendance issues. Thus, the Court finds that Plaintiff has not pointed towards any evidence that Hatcher or Cull are valid comparators.

The Court further concludes that Plaintiff has shown no other evidence of discrimination with regards to her written warning. Plaintiff alleges that Thomas treated Hatcher and Cull better because Hatcher was related to Thomas's boss and Cull was a registered nurse, but neither of these allegations qualify as evidence of discrimination. See Wilson, 376 F.3d at 1091 ("A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by [race or color]."). Additionally, Plaintiff alleges that although she and Hatcher both received a written warning, Defendant gave Hatcher a raise. Raises in 2016, however, were denied to all employees who received a written warning on or after January 1, 2016. (Doc. 63, at 2.) Hatcher received her written warning on December 13, 2015. (Id.) Plaintiff received her written warning on May 27, 2016. (Id.) Thus, Hatcher's raise is no evidence of discrimination. See Flowers, 803 F.3d 1327 ("Title VII does not allow federal courts to second-guess nondiscriminatory business judgments, nor does it replace employers' notions about fair dealing in the workplace with that

15

of judges."). Furthermore, Plaintiff does not deny that she had a recent history of being tardy (doc. 51, at 123) nor that she failed to wear her ID badge (id. at 57). Accordingly, summary judgment is appropriate with regards to Plaintiff's claim of discrimination based upon her written warning.

### 3. Termination of Employment

Plaintiff identifies three potential comparators to show that Defendant discriminated in terminating her employment: Julia Hancock, Callie Elliot, and Mary Jackson. None of Plaintiff's comparators, however, are similarly situated.

Plaintiff claims that Julia Hancock, a Caucasian employee, was given a final written warning, placed on administrative leave, and found sleeping on the job, yet is still employed by Defendant. (Doc. 67, at 6.) First, Plaintiff provides no citations which support her assertions.[4] Defendant, moreover, has provided evidence that Hancock not on final written warning at the time she fell asleep. (Doc. 53, at 4.) Further, when Hancock fell asleep, she was acting as a sitter and fell asleep in part because the patient had asked Hancock to turn the lights

---

[4] Plaintiff cites broadly to "exhibit 2," a 74 page attachment to her reply brief, but fails to specifically locate the evidence supporting her assertion. (Doc. 67, at 6.) Additionally, the evidence cited to support this assertion in her Statement of Material Facts does not support her assertion. Plaintiff cites to Exhibit 23 attached to her Statement of Material Facts. (Doc. 64, at 7.) Exhibit 23, however, is the final written warning given to Hancock as a result of Hancock falling asleep on the job. (Doc. 64-1, at 196-98.) Thus, Plaintiff's cited evidence in her other filings contain no evidence that Hancock was on final written warning when she fell asleep in a patient's room.

and television off.  Thus, Hancock is not a valid comparator for Plaintiff's race or color discrimination claims.

Plaintiff claims that Callie Elliot, a lighter complexioned African-American employee, fell asleep at her desk, cursed on the job, and cursed at a co-worker but was not terminated. (Doc. 67, at 6.)  First, Elliot is an African American and thus disqualified as a comparator for Plaintiff's race discrimination claim.  Second, Plaintiff has not pointed to any evidence that Elliot was on a final warning at the time she fell asleep. Third, Defendant's investigation of Elliot determined that she was not asleep at her desk.  (Doc. 53, at 4.)  Thus, Elliot is not a valid comparator for Plaintiff's race or color discrimination claims.

Plaintiff complains that Mary Jackson, a lighter complexioned African-American employee, allowed a patient under her charge to escape from University Hospital while she was acting as sitter.  First, Jackson is an African American and thus disqualified as a comparator for Plaintiff's race discrimination claim.  Second, once again, Plaintiff provides no specific citations to evidence supporting her assertions.[5]

---

[5] In her reply brief, Plaintiff cites to "exhibit 3" to support this assertion, but only two exhibits are attached to her brief. (Doc. 67, at 6.)  Additionally, Plaintiff's Statement of Material Facts mentions Jackson, but says nothing about Jackson allowing a patient to escape.  (Doc. 64, at 7.)  Further, Plaintiff's reference to Jackson in her motion for summary judgment states only "In the Matter of: Machelle Wiggins v. University Hospital Deposition of Mary Jackson December 20, 2017.  Please see page 5 lines 1-25, page 6 lines

Third, Plaintiff makes no assertion, and provides no evidence, that Jackson was on a final written warning when Jackson allegedly fell asleep. Fourth, Defendant's investigation of Jackson revealed that the patient did not escape because Jackson was sleeping on the job. (Doc. 53, at 4.) Rather, Jackson followed the patient when the patient left her room, but Jackson was forced to leave the patient to obtain help from another hospital employee. (Id.) Thus, Jackson is not a valid comparator for Plaintiff's race or color discrimination claims.

The Court further concludes that Plaintiff has shown no other evidence of discrimination with regards to her termination. Plaintiff alleges that she did not receive "due process" during Defendant's investigation of her misconduct. (Doc. 67, at 6.) Specifically, Plaintiff argues that (1) Defendant conducted a more thorough investigation of Hancock and Elliot's misconduct (doc. 67, at 4), (2) the eyewitnesses Defendant relied on were all Caucasian nurses (id. at 1), and (3) Defendant failed to obtain statements from other employees who worked the night of October 23, 2016, including Calandra

1-25, page 7 lines 6-25, and page 8 lines 1-19." (Doc. 47, at 2.) Plaintiff says nothing about what those cited excerpts will tell the Court or why the Court should look at them. (Id.) Plaintiff, even though she is pro se, has the burden of clearly identifying the evidence she uses to support her assertions and the Court will not dig through her filings to attempt to find evidence for her. See Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir. 1995) ("[A] party contesting summary judgment has a responsibility . . . to highlight which factual averments are in conflict as well as what record evidence there is to confirm the dispute. . . . A court need not make the lawyer's case." (internal quotations and citations omitted)).

Harris (id. at 2). These allegations, however, do not show Defendant's employment decisions were motivated by race or color. Defendant gathered three eyewitness statements that Plaintiff was asleep or appeared to be asleep in room 1043 on October 23, 2016, and Plaintiff herself admitted in her deposition that she had "maybe been dozing." Plaintiff has produced no evidence, other than her own ambiguous testimony, indicating that the three eyewitnesses were lying. Neither has Plaintiff offered any evidence rebutting Defendant's assertion that it attempted to collect a statement from Carrie Harden, who it says was the sitter in the room with Plaintiff the night of October 23, 2016. (Doc. 63, at 2.) Thus, summary judgment is appropriate with regards to Plaintiff's race and color discrimination claim based on her termination.

## C. Retaliation

A claim for retaliation under Title VII that relies on circumstantial evidence follows the McDonnell Douglas burden-shifting analysis. Brown v. Ala. Dept. of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010). Under the McDonnell Douglas framework, "[t]o make a prima facie case for retaliation, the plaintiff must show: 1) a statutorily protected expression; 2) an adverse employment action; 3) a causal link between the protected expression and the adverse action." Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999). If

a plaintiff establishes a prima facie case, then the finder of fact must presume retaliation and the defendant has the burden to produce a legitimate reason for the adverse employment action. Id. "If the defendant offers legitimate reasons, the presumption of retaliation disappears," and the plaintiff must show that the proffered reasons were merely pretext for retaliation. Id. If the plaintiff offers sufficient proof of pretext, she is entitled to a jury trial if she has provided enough evidence by which a rational jury could conclude the defendant retaliated against her. See Chapman v. AI Transport, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000).

Defendant argues that Plaintiff has failed to show a prima facie case. Defendant concedes that Plaintiff's termination was an adverse action. Defendant argues, however, that Plaintiff's complaint to Thomas on May 27, 2016, was not a protected activity and that Plaintiff has failed to identify a causal connection between the protected activity and the adverse action.

### 1. Protected Activity

"[T]o qualify as 'protected activity,' a plaintiff's opposition must be to a 'practice made unlawful by [Title VII.]'" Bush v. Sears Holding Corp., 466 F. App'x 781, 786 (11th Cir. 2012) (citing 42 U.S.C. § 2000e-3(a)). "A plaintiff can show participation in a protected activity by demonstrating that she had a subjective, good-faith belief that her employer was engaged in unlawful employment practices and that her belief

was objectively reasonable in light of the facts and record presented." Brown v. City of Opelika, 211 F. App'x 862, 863 (11th Cir. 2006). "It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that [she] subjectively (that is, in good faith) believed that [her] employer was engaged in unlawful employment practices, but also that [her] belief was objectively reasonable in light of the facts and record presented." Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997).

Defendant argues that Plaintiff's complaint to Thomas was not a protected activity because Plaintiff did not object to a practice made unlawful under Title VII. Defendant claims that "to the extent that Plaintiff alleges any conduct that could arguably be protected, it would be for expressing her unhappiness with the 'unfairness' of Laverene Hatcher and Alba Cull not being given a final warning for attendance when Plaintiff was given one on May 27, 2016." (Doc. 66, at 11.) According to Defendant, because the complaint to Thomas was based upon "nepotism and favoritism" and not an "unlawful employment practice," it was not a protected activity. (Doc. 49-1, at 15.)

First, Plaintiff has not pointed the Court to any evidence that she ever complained to Thomas, or anyone, about being treated unfairly because of her race or color. Second, Plaintiff admitted in her deposition that she believed that: (1)

Thomas gave Hatcher preferential treatment because Hatcher's first cousin was Thomas's boss; and (2) Thomas treated Cull better because Cull was a registered nurse and Thomas treated registered nurses better. (Doc. 51, at 126.) Opposing counsel twice asked Plaintiff to explain what "specifically" and "exactly" she told Thomas, but Plaintiff never testified that she complained about race, color, or disability discrimination:

> Q.      All right. You go on in your EEOC charge to say on May 27th, 2016 I told my supervisor Danette Thomas that I was treated differently.  What specifically did you tell Danette Thomas?
>
> A.      I told her I was treated unfair. I said, Danette -- on the 27th, I told her, I say, if you going to give me the writeup, I say, bring all your employees in here and give them the same one. And I just start naming names. I just start naming names. I say, you got to be fair to me. I say, you got your 6 North South staff, they have time and attendance, I say, by the way, I have perfect attendance. I say, and you bring them in here, and I say, you be fair to me what you're giving me writeups on. All I asked her, I told her I just want to be treated fairly.
>
>                              . . .
>
> Q.      That day that you're referring to in your EEOC charge.  You say on May 27th, 2016 I told immediate supervisor Danette Thomas that I felt I was treated differently.  And my question is, what exactly did you say to her?
>
> A.      To Danette?
>
> Q.      Yes.
>
> A.      I just told her get all her staff time and attendance, I say bring all of us in here, and I say, let's do it fair. I say, when you bring all your staff in here with time and attendance, I say, and give them the same punishment that you give me, then I'll sign those papers.

(Id. at 121-24.)  Third, even Plaintiff's filings in this Court fail to allege that she complained to Thomas of race or color discrimination.[6]  Thus, Plaintiff has cannot establish that her May 27, 2016, complaint was a protected activity.  See Brown, 211 F. App'x at 64 (finding the plaintiff never engaged in a protected activity because she "never mentioned the word 'race' when she complained" and "never voiced a complaint that the city was engaged in an unlawful employment practice").

### 2. Causal Relation

But, even if Plaintiff's May 27 complaint were considered a protected activity, she would still have to establish that her protected activity was casually related to her termination.  "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly

---

[6] None of Plaintiff's filings allege that she complained to Thomas of an "unlawful employment practice" on May 27, 2016. Plaintiff's complaint filed in this case states that after Thomas gave her "three write up [sic] in one day," Plaintiff "called Human Resource Coordinator (Vita Mason) and told her 'I fear for my job of 27 years.'"  (Doc. 1, at 7.)  Similarly, Plaintiff's charge states only that "[o]n May 27, 2016, I told my immediate Supervisor, Danette Thomas, that I felt I was treated differently."  (Id. at 11.) Plaintiff's response to Defendant's motion for summary judgment similarly fails to identify any objection to an unlawful employment practice:  "Plaintiff was unhappy with unfairness of Lavern Hatcher and Alba Cull not been [sic] given a final written warning of attendance when plaintiff was given on May 27, 2016.  Plaintiff however contends the 'different treatment' of Hatcher and Cull was based upon related [sic] to Title VII."  (Doc. 64, at 19.)  This vague reference to Title VII as related to the reason for her "different treatment" is as close as Plaintiff comes to alleging she ever complained to Thomas about an unlawful employment practice.

unrelated. Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent. When evaluating a charge of employment discrimination, then, we must focus on the actual knowledge and actions of the decision-maker." Brown, 211 F. App'x at 863-64.

"The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. But mere temporal proximity, without more, must be very close. A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough. Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." Thomas v. Cooper Lighting, Inc., 506 F.3d. 1361, 1364 (11th Cir. 2007).

Finally, "[a] plaintiff making a Title VII retaliation claim must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Smith v. City of Fort Pierce, Fla., 565 F. App'x 774, 778 (11th Cir. 2014). "Although contesting an unlawful employment practice is protected conduct, the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999). Thus, "an intervening act of

misconduct" can "diminish[] any inference of causation." See Henderson v. FedEx Express, 442 F. App'x 502, 507 (11th Cir. 2011).

Plaintiff has failed to establish any causal connection between her protected activity and her termination. First, Plaintiff has offered no evidence that Mason or Thomas were aware Plaintiff had engaged in protected conduct. Second, the time between Plaintiff's receipt of her final warning and her termination was nearly five months, and Plaintiff has offered no evidence tending to show causation. Third, Plaintiff has offered no evidence otherwise showing that her May 27 complaint was the "but-for cause" of her termination. Defendant alleges Plaintiff was sleeping on the job — an intervening act of misconduct and cause for termination from time immemorial. See Henderson, 442 F. App'x at 507 (holding that the falsification of a time card two weeks after Plaintiff complained of protected activity was enough to destroy inference of causation created by temporal proximity). Defendant conducted an investigation in which it interviewed Plaintiff and three eyewitnesses, concluded that Plaintiff was not only sleeping in room 1043 but had the intent to sleep in room 1043, and determined that termination was appropriate given that Plaintiff was already on a written final warning. Plaintiff offers no evidence, circumstantial or otherwise, that Defendant fired her as a result of anything other than her intervening act of misconduct. See Flowers, 803 F.3d at 1327 ("Put frankly, employers are free to fire their

employees for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." (citations and internal quotations omitted)). Thus, Plaintiff has failed to present evidence tending to show causation and has not established a prima facie case of retaliation based upon color or race.

### III. CONCLUSION

In sum, Plaintiff has failed to provide evidence such that a reasonably jury could find she established a prima facie case of either discrimination or retaliation pursuant to Title VII. Additionally, Plaintiff cannot assert her disability-discrimination claim because she failed to include any such claim in her Charge. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on all but Plaintiffs disability-discrimination claim, and **DENIES** Plaintiff's motion for summary judgment. The Court **DISMISSES** Plaintiff's disability-discrimination claim for failure to exhaust administrative remedies. The Clerk shall **ENTER JUDGMENT** in favor of Defendant and against Plaintiff and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this ___6ᵗʰ___ day of September, 2018.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA